J-S10042-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                  :          PENNSYLVANIA
                                  :
             v.                     :
                                  :
                                  :
ROBERT W. SCHORSCHINSKY      :
                                  :
           Appellant         :    No. 787 MDA 2021

Appeal from the Judgment of Sentence Entered May 14, 2021
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0004487-2019

BEFORE:   MURRAY, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:          **FILED SEPTEMBER 08, 2022**

Appellant, Robert W. Schorschinsky, appeals from the judgment of sentence imposed following his entry of an open guilty plea to a violation of 35 P.S. § 780-113(a)(14) for unlawful administration, dispensing, delivery, gift, or prescription of controlled substances as a medical practitioner.  He claims that the plea court abused its discretion by denying his motion for disqualification and/or recusal that he filed after the court declined to accept a negotiated plea agreement.  He also presents a challenge to the discretionary aspects of his sentence.  Upon review, we affirm.

In May of 2017, Berks County detectives began investigating Appellant, then a doctor, first by examining his prescription drug monitoring program records that indicated high doses of opioid prescriptions to his patients.  N.T.

_____

[*] Retired Senior Judge assigned to the Superior Court.

1/13/21, 7; N.T. 5/14/21, 8.  Following the execution of a search warrant at Appellant's office in Reading, a review of his patient records by another doctor led to the conclusion that he had overprescribed Oxycodone and other controlled substances to twenty of his patients.  N.T. 1/13/21, 7; N.T. 5/14/21, 8.  His opioid overprescriptions ranged from four to sixteen times higher than the CDC's recommended doses and two to eight times higher than the Pennsylvania Medical Society's recommended doses.  N.T. 1/13/21, 7-8; N.T. 5/14/21, 8 ("The morphine milligram equivalent recommended by the CDC are 50 MME a day, and the Pennsylvania Medical Society are 90 MME a day.  The patient analysis by Doctor Negrini were anywhere from 200 to 800 MME a day.").

On January 13, 2021, Appellant proceeded to a hearing where he intended to enter a negotiated guilty plea to one count of violating § 780-113(a)(14) in exchange for an agreed-upon sentence of 6 to 12 months of imprisonment to be followed by 18 months of house arrest or intermediate probation and 3 years of probation.  N.T. 1/13/21, 2, 6-7.  As a condition of the plea, Appellant would voluntarily relinquish his medical license from the Commonwealth and his Drug Enforcement Administration license.  *Id.* at 2-3, 6.  Appellant had pending charges for twenty counts of violating § 780-113(a)(14) and one count for a violation of § 780-113(a)(12) for acquisition or obtaining of possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge.  *Id.* at 3; Bills of Information, 11/26/19, 1-2.  At the start of the hearing, the Commonwealth requested to

- 2 -

amend the bills of information, without objection, to identify all of Appellant's patients involved with the various charges as being associated with the lone charge to which Appellant intended to enter his plea. N.T. 1/13/21, 2-4.

As part of his plea colloquy, Appellant acknowledged that the court was not bound by the parties' negotiated agreement. N.T. 1/13/21, 6. The court declined to accept it. It cited, *inter alia*, the downward departure from the recommendation of the Sentencing Guidelines, the references in an affidavit of probable cause to overdoses by at least three of Appellant's patients, one of whom had since passed away, the fact that at least one of those patients was elderly, the fact that Appellant's medical license "would have been lost regardless if there [had been] a conviction," and that Appellant declined to offer an allocution statement ("You said nothing. You said nothing. I gave you the opportunity and you said nothing."). *Id.* at 11, 13-15. Interspersed in the court's discussion of its reasons for declining to accept the plea agreement were comments about other sentencings that the court had conducted that morning. The court referenced that it had imposed a standard guideline range sentence in another case for a higher term than the negotiated sentence in this case and for a crime with a lower offense gravity score than Appellant's charge, and that the court "didn't come off the guidelines" for two defendants who had accepted responsibility for their crimes. *Id.* at 12, 15-16.

While subsequently awaiting a trial listing, Appellant filed a motion requesting the disqualification and/or recusal of the judge who rejected his

negotiated plea agreement. He alleged that the judge's comments upon rejecting his plea agreement demonstrated a personal bias against him. Disqualification/Recusal Motion, 2/19/21, ¶¶ 19-20. He cited that the judge was "not swayed" by the relinquishment of his medical license, the judge referred to the sentences of other unidentified defendants, the judge referred to him as an "educated man," the judge said that he "should have known better" than a young man who had been previously sentenced by the court, the judge had referred to his failure to speak on his own behalf, and the judge compared him to other defendants who had appeared before the court for sentencing. *Id.* at ¶¶ 13-18. On April 16, 2021, the plea court denied the motion, offered context for its prior remarks, and explained its conclusions that the court was not biased against Appellant and that the denial of his plea agreement did not create an appearance of impropriety. N.T. 4/16/21, 5-17, 19-20.

On May 14, 2021, Appellant tendered an open guilty plea to a single count of violating § 780-113(a)(14). The court imposed 60 to 120 months of imprisonment.[1] N.T. 5/14/21, 62. At sentencing, Appellant proffered an

---

[1] Appellant had a prior record score of zero and the Sentencing Guidelines recommended a minimum term of imprisonment between 60 to 78 months, plus or minus 12 months for aggravating or mitigating circumstances. N.T. 1/13/21, 9; N.T. 5/14/21, 12, 62; *see also* 204 Pa. Code § 303.15 (offense listing; 6th ed., revised, through 7th ed. & amend. 1-4); 204 Pa. Code § 303.16(a) (basic sentencing matrix; 6th ed., revised, through 7th ed. & amend. 1-4). Appellant's offenses spanned multiple editions and amendments of the Sentencing Guidelines but the same guideline range would have been
*(Footnote Continued Next Page)*

expert report reflecting a psychological evaluation and a discussion of alleged mitigating factors. N.T. 5/14/21, 12-13 & Exhibit D-1. He also presented the testimony of seven of his former patients, a spouse of one of his former patients, his two sisters, and his wife. N.T. 5/14/21, 14-43.

Appellant filed a timely motion for reconsideration of his sentence, alleging that, based on the expert report and testimony presented at the sentencing hearing, there was significant evidence of mitigating factors for a downward departure from the range of minimum imprisonment recommended by the Sentencing Guidelines. Reconsideration Motion, 5/21/21, ¶¶ 6-7. Appellant thereafter filed a timely notice of appeal and a timely concise statement of errors complained of on appeal.[2] Order Denying Reconsideration Motion, 5/25/21, 1; Notice of Appeal, 6/2/21, 1; Rule 1925 Order, 6/14/21, 1; Rule 1925(b) Statement, 6/25/21, 1-2.

Appellant presents the following questions for our review:

A.   Whether the Court abused its discretion by denying Appellant's motion for disqualification and/or recusal after the court rejected a negotiated plea agreement between the Appellant and the Commonwealth and then placed on the

_____

recommended throughout that period. ***See*** N.T. 5/14/21, 8; Bills of Information, 11/24/19, Count 1 (identifying that Appellant's violations of § 780-113(a)(14) occurred from June 20, 2012 to August 2, 2019); 204 Pa. Code § 303.15 (offense listing; 6th ed., revised, through 7th ed. & amend. 1-4); 204 Pa. Code § 303.16(a) (basic sentencing matrix; 6th ed., revised, through 7th ed. & amend. 1-4).

[2] We note with strong disapproval that the Commonwealth, here represented by the Attorney General's Office, has not filed a brief in this matter despite this Court granting it three extensions of time within which to do so.

record statements that demonstrated the court could not be fair and impartial, including the following: (a) that the Appellant was an educated man and should have known better than the young man who the Court previously sentenced to a longer term of incarceration; (b) that unlike two other young men that the Court imposed a sentence earlier in the day, the Appellant failed to speak on his own behalf and accept responsibility; (c) that since the Court previously imposed standard range sentences on the aforementioned two other young men, there was no reason to deviate from the standard range for the Appellant; [and] (d) that the Court cited several specific instances of other unidentified individuals recently sentenced to longer terms of incarceration with lower offense gravity scores than the Appellant?

B.      Whether the Court abused its discretion by denying the Appellant's post-sentence motion to modify and reduce [s]entence by failing to acknowledge mitigating factors that [w]arranted a downward departure from the sentencing [g]uidelines including the testimony of several former patients [o]f the Appellant's and the psychological report of Dr. Frank Datillo?

Appellant's Brief at 4 (suggested answers and references to the sentencing court's answers omitted).

In his first issue, Appellant challenges the denial of his motion for disqualification and/or recusal of the plea court. He argues that comments made by the court when it rejected his negotiated plea agreement "raise[d] serious questions about [the court's] future impartiality and fairness." Appellant's Brief at 16. He cites the court's remarks that addressed, *inter alia*, other sentencing proceedings that the court had conducted on the morning of that hearing, the fact that Appellant was more educated than the other defendants the court had sentenced, the fact that Appellant did not offer an

allocution statement, and that the court did not think a downward deviation from the minimum term recommended by the Sentencing Guidelines was appropriate. *Id.* citing N.T. 1/13/21, 11-16. He also points out that the plea judge has presided over the Berks County Drug Treatment Court and suggests that that role along with the court's comments "create[d] the reasonable appearance [that he] could not receive a fair trial" below. Appellant's Brief at 21-22.

The plea court asserts that Appellant waived his disqualification/recusal claim by not timely raising it at the hearing when the court had rejected his negotiated plea agreement. Plea Court's Opinion, 8/10/22, 5-6. The court notes that Appellant had the burden to raise his objection "at the earliest possible moment." *Id.* Appellant acknowledges the court's position on waiver and suggests that it "further demonstrates the appearance of partiality." Appellant's Brief at 18. The court, in the alternative, incorporated by reference the remarks it made at the time that it denied the disqualification/recusal motion. Plea Court's Opinion, 8/10/22, 6.

This Court presumes the impartiality of lower court judges and reviews the denial of a recusal motion under an abuse of discretion standard:

> This Court presumes judges of this Commonwealth are "honorable, fair and competent," and, when confronted with a recusal demand, have the ability to determine whether they can rule impartially and without prejudice. The party who asserts a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal, and the decision by a judge against whom a plea of

prejudice is made will not be disturbed except for an abuse of discretion.

***Commonwealth v. Luketic***, 162 A.3d 1149, 1157 (Pa. Super. 2017) (citations omitted). A "party seeking recusal or disqualification [is required] to raise the objection *at the earliest possible moment*, or that party will suffer the consequence of being time barred." ***Lomas v. Kravitz***, 170 A.3d 380, 389 (Pa. 2017) (citation omitted; emphasis added).

As a preliminary matter, we must resolve the question of whether Appellant timely raised his recusal claim "at the earliest possible moment" when he filed his disqualification/recusal motion thirty-seven days after the hearing during which the court rejected his negotiated plea agreement. Here, the sole basis for the recusal motion was alleged to be the court's comments at the hearing on January 13, 2021. ***See*** Disqualification/Recusal Motion, 2/19/21, ¶¶ 8-20. Appellant alleged below that the recusal motion was timely because "the principal facts constituting the grounds for th[e] Motion were uncovered following receipt of the transcript" for the January 13th hearing. ***Id.*** at ¶ 8. Even though he admittedly received the transcripts from the hearing on January 22, 2021, see Appellant's Brief at 17, he did not file his disqualification/recusal motion until February 19, 2021. Appellant's instant discussion of the timeliness of his disqualification/recusal motion did not provide any explanation why his recusal claim could not have been raised in a contemporaneous oral motion if it was based only on the plea judge's in-court comments.

The "earliest possible moment" for bringing a recusal claim is "when the party knows of the facts that form the basis for a motion to recuse." **Lomas**, 170 A.3d at 390. If the only facts cited as the basis of a recusal motion are a jurist's comments in open court then our case law would dictate that the recusal claim must be raised in a contemporaneous oral motion or otherwise it would be waived. *See, e.g., Coulter v. Lindsay*, 159 A.3d 947, 950 (Pa. Super. 2017) (*per curiam*) (where a party argued that all three members of a Superior Court panel should recuse themselves, the Appellant waived the recusal claim by not raising it at an oral argument and instead raising it nine days after the case was argued). In this instance, there was no alleged or apparent reason for counsel to wait to raise his claim until after a transcript could be produced and then after almost another month had elapsed following his receipt of the transcript. Accordingly, we hold that Appellant did not present his recusal claim in a timely manner, and his first issue is waived.

Appellant implies that waiver should not apply because the timing of his recusal claim did not result in "further delay to the court system." Appellant's Brief at 17-18 ("The purpose of raising such a claim in a timely manner is to avoid further delay to the court system."). We would agree that the recusal motion in this instance did not delay a scheduled trial date, however, Appellant does not cite to any precedent providing that the "earliest possible moment" deadline for making a recusal claim could be tolled in the absence of the delay of court proceedings. Our independent review has not uncovered caselaw that would allow him to argue that he could wait to bring a recusal motion so long

as court proceedings have not been delayed. ***See Goodheart v. Casey***, 565 A.2d 757, 764 (Pa. 1989) ("In the case, *sub judice*, the facts suggesting the disqualification [of Justices of this Court] were known or should have been known when the case was called for argument and are therefore waived. This is so because the jurist, under such circumstances, may properly assume that the lack of objection by the litigants reflects the appropriateness of his or her participation."); ***see also League of Women Voters of Pennsylvania v. Commonwealth***, 179 A.3d 1080, 1086 (Pa. 2018) (Wecht J., single-Justice order) ("Litigants cannot be permitted to hedge against the possibility of losing a case on the merits by delaying the production of arguable grounds of disqualification, or, worse, by digging up such grounds only after learning of an adverse order. To hold otherwise would encourage judge-shopping, would undermine the interests in the finality of judicial decisions, and would countenance extensive and unnecessary expenditures of judicial resources…"). Delay of proceedings can of course support a finding that a party did not timely raise a recusal claim, however, the absence of such delay does not allow an expanded deadline for pursuing recusal.

We note that Appellant did not address the plea court's assignment to a drug treatment court in his disqualification/recusal motion. He appears to have addressed it for the first time at the hearing on his motion. ***See*** N.T. 4/16/21, 4-5 ("This Court has and I believe continues to address the Drug Treatment Court program in Berks County … But the appearance here, based upon the comments made at the time of sentencing and the Court's handling

and running of the Drug Treatment Court certainly demonstrates, at least on its face, some reason to be concerned."). To the extent that the judge's assignment on a drug treatment court became a secondary reason for recusal, the record is silent as to whether that alternate basis for recusal could toll the time for Appellant to raise his claim. Appellant's counsel did not suggest below that the judge's assignment on a drug treatment court was a previously unknown fact. Moreover, the court noted below that it had that assignment for at least five years prior to the hearing during which the court rejected Appellant's negotiated plea and made the comments forming the basis for Appellant's claim in his written motion. N.T. 4/16/21, 18 ("I was assigned to the Drug Treatment Court when I came over to criminal court so somewhere [at] the end of 2015 or the beginning of 2016."). As a result, the inclusion of the secondary reason for the recusal claim could not provide a basis for concluding that Appellant timely filed his motion.

Even if the recusal claim had been timely raised, we would not conclude that the denial of Appellant's motion was an abuse of discretion. The comments of the plea court that formed the basis for rejecting Appellant's motion did not demonstrate bias or partiality requiring recusal. At a minimum, Appellant did not satisfy his burden of production and persuasion.

"Recusal is required wherever there is substantial doubt as to the jurist's ability to preside impartially." *In Interest of McFall*, 617 A.2d 707, 713 (Pa. 1992). "A jurist's impartiality is called into question whenever there are factors or circumstances that may reasonably question the jurist's impartiality

in the matter." **Id.** "Thus, '[i]n order for the integrity of the judiciary to be compromised, we have held that a judge's behavior is not required to rise to a level of actual prejudice, but the appearance of impropriety is sufficient.'" **Id.** at 712. "[T]he appearance of impropriety sufficient to disqualify a judge exists when 'a significant minority of the lay community could reasonably question the court's impartiality.'" **Commonwealth v. Dip**, 221 A.3d 201, 207 (Pa. Super. 2019) (citation omitted).

The comments that formed the basis for the recusal claim in Appellant's motion included the following three passages:

> THE COURT: I'm going to be very honest. I don't like this plea agreement. The standard range here is 60 to 78 months. I mean, I understand that he's voluntarily giving up his license. I -- obviously, I don't know the procedure of him losing his license because I don't do that type of work so I don't know what it takes to do that. I would assume by this type of conviction that it wouldn't be too very difficult to do that; but I mean, the standard range is 60 to 78 months plus or minus 12 months. So that brings us down to 60 minus 12 is what, 48.
>
> [Appellant's counsel]: Your Honor, I think you have to look at the age of the individual as well as his overall health. I think --
>
> THE COURT: I know; but, you know, here's what -- here's my trouble. I understand what you're saying, but this morning I just sentenced somebody who had an OGS [offense gravity score] of -- prior record score of 1 and an OGS of 8 on one offense and then on the other one, the other count, he pled guilty to was an OGS of 2 -- I'm sorry. I'm not -- here it is. My notes. On Count 2, he had an OGS of 11. The standard range was 42 to 60 months. I just sent him to a state correctional facility for 4 to 8 years.

N.T. 1/13/21, 11-12, cited at Appellant's Brief at 18.

- 12 -

THE COURT: When I look at the Probable Cause of the patients that were attached in Table No. 1 to the Information of what -- in which he's pled guilty, it has patient B.S., overdose reported 2018; patient J.M., overdose reported 2017; patient N.S., overdose reported 2016 and deceased. Why's he deceased, I don't know. I don't know according to the way this is laid out if it's a result of this. Then what is really troubling to me, really troubling is patient J.M., Dr. Schorschinsky treated J.M. for chronic pain but objective findings described some mild cervical spine findings, neurosurgery found no reason to operate in 2014. Patient's main issues were related to his mental health and residual weakness due to a prior stroke. And I want to put this on the record that this patient's date of birth is July 20th of 1946. He was elderly.

N.T. 1/13/21, 13-14, cited at Appellant's Brief at 20.

THE COURT: I just don't know how we justify -- I don't know there's any reasons -- just because he gave -- his license would have been lost regardless if there's a conviction. I don't think him voluntarily turning it over is any great -- I don't think it takes the guidelines down and I don't know how I can sit here and sentence some guy 15, 20 minutes ago to 4 to 8 years in a state correctional institution. And there was another kid who was 20 years old who has -- he's an educated individual. He's gone to college. He's gone to medical school. He's an educated individual. He absolutely knows what this was doing to people out on the street. Absolutely knows. And just because he had a prescription pad, I don't see how that makes it any different than the other gentleman that I just sent to a state correctional institution for 4 to 8 years. How does it make it any different? It's not right. It's just not right. Just because he has a medical degree. He knows better than that other individual that just went through the door.

And I will say this, the other two men -- and I don't want to call the other guy a man. He's only 20. A young kid. They both stood here in front of me and said, I accept responsibility and now I have to pay the consequences. You've said nothing. You said nothing. I gave you the opportunity and you said nothing. These other two guys -- the one kid graduated from high school. That was it. You have four years of a medical degree and whatever else because I don't know what your line of practice includes. But I don't know

- 13 -

how I can sit here and -- why would I come so far off the guidelines, so far off the guidelines?

The other two people who were standing here in front of me I didn't come off the guidelines for them. I believe they took -- if I -- I'd have to go back. I think they took standard range sentences. I just -- I can't accept this. I don't think it's right. I don't think it's right for so many reasons. So I'm not going to --

N.T. 1/13/21, 14-16, cited in part at Appellant's Brief at 19.

We do not find any basis to conclude that the plea court abused its discretion by not recusing itself because of the above-reproduced remarks. The cited comments did not reflect that the court held any bias against Appellant and rather showed that, in explaining its reasoning for rejecting the parties' plea agreement, the court was unable to conclude that a significant downward departure from the term recommended by the Sentencing Guidelines was an appropriate result.

The court's references to its other sentencing cases on the morning of the hearing were not inappropriate. The court was not implying that it had to skew a sentence or impose a particular sentence in the instant case to balance out or match terms of sentence in other proceedings and thus deprive Appellant of an individualized sentencing. *See, e.g., Luketic*, 162 A.3d at 1162 n.13 ("standardized sentences based on a class of crimes or criminals are prohibited"); *see also id.* at 1165 ("It is also an abuse of discretion to base one defendant's sentence on the sentence imposed on another defendant."). The court was simply addressing other cases to compare its efforts to sentence consistent with the recommendations of the Sentencing

- 14 -

Guidelines unless it was provided with sufficient reasons for departing from those recommendations. *See Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) (a sentence imposed within the standard guideline range is presumptively reasonable). The court's comments reinforced that it was striving to remain an impartial jurist instead of evincing a possible bias against Appellant. The court made that apparent in its explanation for its ruling on the recusal motion. *See* N.T. 4/16/21, 13-16 (the court referred to its reference about "two other individuals that [it] had just sentenced" and then discussed the purpose and applicability of the Sentencing Guidelines).

To the extent that the court referenced the fact that Appellant never offered an allocution statement at the hearing, we do not find a basis for relief. The court correctly explained below to Appellant that it considered the existence of lack of remorse as an acceptable sentencing factor. N.T. 4/26/21, 16 (THE COURT: "With respect to the comment that counsel suggests in the motion about the remorse, again, that is a factor that I am to consider under the Sentencing Code…"); *see Commonwealth v. Begley*, 780 A.2d 605, 644 (Pa. 2001) (noting lack of remorse, as a sign of the defendant's character, is an appropriate consideration for sentencing outside of the guidelines); *Commonwealth v. Summers*, 245 A.3d 686, 695 (Pa. Super. 2021) ("Lack of remorse is an appropriate sentencing consideration.").

If the court had referenced the absence of an allocution statement as the basis for the imposition of an aggravated range sentence or a sentence above the aggravated range, then Appellant would have had a basis for

seeking recusal. If that had occurred, he could have argued that the court was biased against him because it would have stated an intent to punish him for the exercise of his constitutional rights, as in **Commonwealth v. Bethea**, 379 A.2d 102 (Pa. 1977), where our Supreme Court ruled that it was constitutionally impermissible to impose a more severe sentence because a defendant chose to stand trial rather than enter a guilty plea. However, that is not what happened here. The court only referenced the lack of an allocution statement here as a declined source for additional mitigation as Appellant sought a significant downward departure from the guidelines' sentencing recommendation.

In **Commonwealth v. Bowen**, 975 A.2d 1120 (Pa. Super. 2009), this Court held both that a defendant's silence at sentencing may not be considered as "indicative of his failure to take responsibility for the crimes for which he was convicted" and "that silence at sentencing may not be the **sole** factor in determining a defendant's lack of remorse." 975 A.2d at 1121 (emphasis added). To the extent that the court here, upon considering the negotiated plea agreement, referenced Appellant's silence, those comments took place after the court's lengthy discussion about the references to Appellant's patients in the affidavit attached to his Bills of Information.

The court's discussion about the patients appeared to be for the purpose of identifying that Appellant had demonstrated a lack of remorse. It focused on the possibility that Appellant's patients may have suffered overdoses and possibly died as a result of the crime to which he was pleading guilty. N.T.

1/13/21, 13-14. Moreover, the court addressed the plight of one elderly patient to identify that Appellant had overprescribed painkilling medication to that person even though his ailments (mental illness and residual weakness) would not seem to require the use of those drugs. *Id.* The ensuing references to Appellant's vast educational background in this context naturally drove home the notion that Appellant was an intelligent person based on his continued practice of medicine and thus he should have known better than to engage in his criminal conduct and was thus clearly culpable for his actions. The court's combined discussion of these factors suggesting a lack of remorse rendered harmless any error that could have resulted from the court's statement, "You've said nothing," being construed as a finding that Appellant's silence was proof of his refusal to take responsibility for his crime. *See* **Bowen**, 975 A.2d at 1128 (holding that, even where a court erred by relying on a defendant's silence to establish his lack of remorse, there was no need for a remand and this Court could affirm an aggravated-range sentence where the trial court cited numerous other aggravating factors).

Here, the court rejected the parties' negotiated plea agreement as a matter of its discretion. **See Commonwealth v. White**, 787 A.2d 1088, 1091 (Pa. Super. 2001) ("While the Commonwealth and a criminal defendant are free to enter into an arrangement that the parties deem fitting, the terms of a plea agreement are not binding upon the court. Rather the court may reject those terms if the court believes the terms do not serve justice."). Appellant's recusal claim proved, at most, that the court could have provided

a clearer explanation for its rationale for rejecting the agreement at the time that the rejection occurred. The claim did not demonstrate bias or an appearance of impropriety necessitating a recusal because the court's comments, when properly viewed in their context, provided a reasonable explanation for why the negotiated plea agreement did not serve justice: the court did not find adequate mitigating circumstances that justified the imposition of a sentence reflecting a steep downward deviation from the recommendations of the Sentencing Guidelines.

Even if we generously construed Appellant's discussion of the plea judge's experience of being assigned to a drug treatment court as preserving an alternate theory for requesting recusal, we could not find a basis for relief. Appellant suggests that because the jurist who sat as the plea court separately sat as a drug court judge and "listened to numerous individuals … speak about their circumstances that led them to commit crimes associated with their addictions," he "could not receive a fair trial" in front of that judge. Appellant's brief at 21-22. He cites no supporting law to make that argument and it is meritless because it simply asks this Court to ignore the presumption of impartiality based on nothing more than a jurist's continued service for the Judiciary.

In his second issue, Appellant challenges the discretionary aspects of his sentence. He claims that his sentence at the bottom of the standard range recommended by the Sentencing Guidelines was excessive and that the sentencing court failed to issue "reasonable, proper, and sufficient reasons"

- 18 -

for it. Appellant's Brief at 22. He also asserts that the sentencing court should have sentenced him below the guidelines' recommended standard range based on his cognitive decline that was detailed in an expert report to the plea court and the testimony he presented at his sentencing hearing. *Id.* at 25-26. He alleges that the court ignored his mitigation evidence. *Id.* at 27.

There is no absolute right to appellate review of a discretionary sentencing claim. ***Commonwealth v. Solomon***, 247 A.3d 1163, 1167 (Pa. Super. 2021) (*en banc*). Rather,

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; ***see*** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Manivannan***, 186 A.3d 472, 489 (Pa. Super. 2018) (citation omitted). Following satisfaction of all four elements, this Court then reviews the underlying discretionary aspects of sentencing issue, pursuant to an abuse of discretion standard. ***Commonwealth v. Akmedov***, 216 A.3d 307, 328-29 (Pa. Super. 2019) (*en banc*).

As preliminary matters, we acknowledge that Appellant timely filed a notice of appeal and partially preserved his claim. Appellant did not raise any discretionary sentencing claims at the sentencing hearing after the imposition of his prison term. N.T. 5/14/21, 62-63. Accordingly, his instant claim was

only preserved below to the extent that it was asserted in his post-sentence motion for reconsideration of his sentence. *See Commonwealth v. Hartman*, 908 A.2d 316, 319 (Pa. Super. 2006) (Hartman waived a discretionary sentencing claim by not preserving it at sentencing or in a timely post-sentence motion). His assertions about his sentence being excessive and the court failing to properly consider his mitigation evidence were arguably included in his post-sentence motion. *See* Reconsideration Motion, 5/21/21, ¶ 6 ("That the Defendant avers that there was significant evidence of mitigating factors that warranted a downward departure from the sentencing guidelines."). His post-sentence motion was silent concerning a claim that the sentencing court failed to offer an adequate statement of reasons for his sentence. Accordingly, that part of his claim is waived.[3] *See Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa. Super. 2003) (discretionary sentencing claim waived where, although Mann filed a post-sentence motion, the motion did not include the specific claim raised on appeal); Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

---

[3] To the extent that Appellant waived that part of his claim, the waiver is immaterial. That sub-part of his claim was unavailing where he received a sentence at the bottom of the standard range recommended by the Sentencing Guidelines. *See Commonwealth v. Leatherbury*, 116 A.3d 73, 83 (Pa. Super. 2015) ("Here, each of Leatherbury's sentences was within or below the standard range of the sentencing guidelines … Thus, the trial court was not required to provide a statement of reasoning and this claim does not raise a substantial question.").

As for the remainder of the threshold issues we must review before proceeding to substantive review of the instant claim, we note that Appellant has included a statement pursuant to Pa.R.A.P. 2119(f) in his brief. Appellant's Brief at 10-12. That section provides some boilerplate law and the following paragraph addressing his claim:

> Appellant, a first-time offender, was sentenced to a period of incarceration of 5 to 10 years. This sentence was issued without sufficient reasons being placed on the record and is so disproportionate as to implicate the fundamental norms that underlie the sentencing process. This is a substantial question for the Superior Court to determine.

*Id.* at 11-12. Nothing in his Rule 2119(f) statement specifically addressed the preserved portion of his claim alleging that the sentencing court abused its discretion by imposing a standard guideline range sentence that was excessive due to the court's supposed failure to consider his mitigation evidence. While ordinarily the failure to demonstrate a substantial question for the preserved portions of a discretionary sentencing claim in the Rule 2119(f) statement may render the claim unreviewable, we may overlook Appellant's noncompliance with Rule 2119(f) because the Commonwealth has not filed a brief and thus did not raise an objection to Appellant's Rule 2119(f) statement. **See Commonwealth v. Kiesel**, 854 A.2d 530, 533 (Pa. Super. 2004) (citation omitted) ("[W]hen the appellant has not included a Rule 2119(f) statement and the [Commonwealth] has not objected, this Court may ignore the omission and determine if there is a substantial question that the

sentence imposed was not appropriate or enforce the requirements of Pa.R.A.P. 2119(f) *sua sponte*, i.e., deny allowance of appeal.").  Here, we may elect to determine whether Appellant's preserved claim raises a substantial question.

"A 'substantial question' involves whether a sentence follows the Sentencing Code and fundamental norms that underlie the sentencing process."  ***Commonwealth v. Crawford***, 254 A.3d 769, 782 (Pa. Super. 2021).  The claim before us is that "the court abused its discretion by ignoring the overwhelming mitigation presented at the time of sentencing," and, as a result, the court did not deviate below the standard range recommended by the Sentencing Guidelines.  Appellant's Brief at 27.  Our jurisprudence on the existence of a substantial question based on claims of excessive sentences being imposed as a result of the failure to consider mitigating factors has been less than clear.  ***See***, ***e.g., Commonwealth v. Miller***, 275 A.3d 530, 535 (Pa. Super. 2022), ***citing Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa. Super. 2014) (holding that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question."); ***Commonwealth v. Velez***, 273 A.3d 6, 9 (Pa. Super. 2022), ***citing Raven*** and ***Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (stating that a claim that a sentence was excessive in light of certain mitigating factors raises a substantial question); ***compare with Commonwealth v. Crawford***, 257 A.3d 75, 79 (Pa. Super. 2021) ("this Court repeatedly held that 'a claim of inadequate consideration

of mitigating factors does not raise a substantial question for our review'"), *citing Commonwealth v. Eline*, 940 A.2d 421, 435 (Pa. Super. 2007); *Commonwealth v. Watson*, 228 A.3d 928, 936 (Pa. Super. 2020) ("[a]n allegation that a sentencing court 'failed to consider' or 'did not adequately consider' certain factors does not raise a substantial question that the sentence was inappropriate."), *citing Commonwealth v. Cruz-Centeno*, 668 A.2d 536, 545 (Pa. Super. 1995).

The plea court opined that Appellant's mitigating factors claim did not present a substantial question for review. Plea Court Opinion, 8/10/21, 9, *citing Commonwealth v. Pacheco*, 227 A.3d 358, 375 (Pa. Super. 2020) ("an allegation that a sentencing court failed to consider or did not adequately consider certain mitigating factors does not raise a substantial question that the sentence was inappropriate"), *affirmed after allocatur was granted in part on unrelated issues*, 263 A.3d 626 (Pa. 2021). We find that Appellant's challenge to his standard guideline-range sentence raises a substantial question as it presents a combined claim alleging an excessive sentence, a failure to consider mitigating factors, and a misapplication of the Sentencing Guidelines. *See Raven, supra; Caldwell, supra;* 42 Pa.C.S. § 9781(c)(2) (this Court shall vacate a sentence and remand for resentencing if it finds that "the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable"); *but see Commonwealth v. Rhoades*, 8 A.3d 912, 918-19 & n.12 (Pa. Super. 2010) (concluding that a defendant who received

a standard-range sentence did not raise a substantial question when challenging the sentencing court's alleged failure to consider mitigating factors); **Commonwealth v. Moury**, 992 A.2d 162, 175 (Pa. Super. 2010) (same where the sentencing court imposed two consecutive standard-range terms of imprisonment). Accordingly, we will proceed to reviewing the merits of Appellant's claim.

Appellant asserts that the plea court "fail[ed] to acknowledge mitigating factors that [w]arrated a downward departure from the [S]entencing Guidelines" and "ignor[ed] the overwhelming mitigation presented at the time of sentencing." Appellant's Brief at 22, 27. The mitigating evidence referred to by Appellant was an expert report reflecting a psychological evaluation and a discussion of alleged mitigating factors and the testimony of seven defense witnesses, including some of Appellant's former patients and family members of his and one of his former patients.

The record does not support Appellant's allegation that the plea court failed to acknowledge or ignored his mitigation evidence. When Appellant's counsel asked to mark and move his expert report into the evidentiary record at his combined plea and sentencing hearing, the court acknowledged its review of the report. N.T. 5/14/21, 13 ("THE COURT: … That report previously had been provided to the Court in anticipation of today's hearing and I did have the opportunity to review it."). At the outset of a lengthy review of the relevant information presented for sentencing, the plea court explicitly acknowledged its consideration of Appellant's mitigation evidence:

- 24 -

> THE COURT: I have considered the rehabilitative needs of the defendant. I have considered his statement here today. His apology to the victims. I've considered his -- considered his prior criminal record, which is zero. His age, I believe on his guilty plea paperwork as of today was 62. ***I have considered his personal characteristics, which were testified to today by the multiple witnesses that were presented on his behalf*** …
>
> I have considered his remorse, which I believe today he has submitted an apology to the victims. We don't have any Commonwealth witnesses. I have considered the nature of the offense. We did not have a PSI. However, as indicated ***Defense 1 is a very comprehensive, I believe it was approximately 25 page report by Doctor Frank Dattillo*** … ***and the Court had the benefit of reading this prior to today, which is extensive and goes back to his childhood through high school, college, medical school***. The accident is referenced here, and through his employment. His rehabilitation with the VA and then his continuing on with medical school and getting his licensing.

***Id.*** at 54-55 (emphasis added).

The court's statements in the record referencing its consideration of Appellant's mitigation evidence render the instant claim meritless. In raising this claim, Appellant is implicitly suggesting that this Court should reweigh his mitigation evidence and substitute our judgment in place of the sentencing court's order. A request of that nature is outside our purview. ***See Commonwealth v. Bowens***, 265 A.3d 730, 764 (Pa. Super. 2021) (*en banc*) ("We cannot reweigh the sentencing factors and impose our judgment in the place of the sentencing court."), ***quoting Commonwealth v. Macias***, 968 A.2d 773, 778 (Pa. Super. 2009); ***Commonwealth v. Sexton***, 222 A.3d 405, 422 (Pa. Super. 2019) ("[I]t would be inappropriate for us to second-guess the trial court's weighing of the aforementioned factors, for we cannot

substitute our view of aggravating or mitigating factors with those of the trial court, nor may we reweigh those mitigating factors which Appellant thinks the sentencing judge overlooked."). Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/8/2022